IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____FILED _____ENTERED
_____LODGED _____RECEIVED

JAN 1 9 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

UNITED STATES OF AMERICA

v.          Criminal No.: RDB-17-0288

NATHANIEL THOMAS OAKS,

Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On May 31, 2017, the Grand Jury returned a nine-count Indictment (ECF No. 16) charging the Defendant Nathaniel Thomas Oaks, a State Senator representing the City of Baltimore in the Maryland General Assembly, with the corrupt use of his office in a bribery scheme. He has been charged with three counts of wire fraud under 18 U.S.C. § 1343, one count of honest services wire fraud under 18 U.S.C. §§ 1343 and 1346, and five counts of Travel Act violations under 18 U.S.C. § 1952. This first Indictment also includes a forfeiture count in which the Government seeks forfeiture of at least $15,300 allegedly paid to Defendant Oaks over the course of the bribery scheme. It is specifically alleged that Senator Oaks accepted bribes from "Mike Henley," a confidential source of the Federal Bureau of Investigation ("FBI") posing as a businessman from Texas seeking business opportunities in a U.S. Department of Housing and Urban Development ("HUD") project in Baltimore.

Almost six months later and after this case had been scheduled for trial, on November 15, 2017, the Grand Jury returned a Superseding Indictment adding a tenth count

1

charging the Defendant with obstruction of justice under 18 U.S.C. § 1512(c)(2). It is specifically alleged that Senator Oaks, having been confronted by FBI agents with evidence of his accepting bribes in connection with the Baltimore HUD contracts, agreed to cooperate with the Government. In this respect, it is alleged that Oaks advised FBI agents that he had accepted gifts and gratuities from another individual, "Person #1," who had been willing to also make corrupt payments to other public officials. These alleged payments in no way related to the FBI confidential source posing as a businessman. Despite this alleged cooperation, it is alleged that Oaks ultimately obstructed justice by warning this individual that he was under investigation by government agents.

Currently pending is the Defendant's Motion for Severance of Count Ten from the initial Counts One through Nine. (ECF No. 44.) After reviewing the parties' submissions, this Court conducted a hearing on January 11, 2018. The Court has further reviewed additional submissions of counsel within the past week. For the reasons that follow, Defendant's Motion is GRANTED, and Count Ten is severed from Counts One through Nine. The trial of this case shall proceed as scheduled on April 16, 2018 with respect to Counts One though Nine and a separate trial – to be scheduled at a later date – shall be held with respect to Count Ten. Joinder is not proper under Rule 8(a) of the Federal Rules of Criminal Procedure as the only real connection between Counts One through Nine and Count Ten is the alleged inherent corruption of Senator Oaks. Furthermore, even if joinder of the separate charges were permitted, severance is mandated in the exercise of this Court's discretion under Rule 14 of the Federal Rules of Criminal Procedure as there is a risk of prejudice to the Defendant.

# STANDARD OF REVIEW

## I.    Rule 8(a) – Joinder of Offenses

Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of separate

counts in a single indictment. Rule 8(a) provides:

> The indictment or information may charge a defendant in separate counts
> with 2 or more offenses if the offenses charged—whether felonies or
> misdemeanors or both— are of the same or similar character, or are based on
> the same act or transaction, or are connected with or constitute parts of a
> common scheme or plan.

Fed. R. Crim. P. 8(a). The United States Court of Appeals for the Fourth Circuit has

consistently held that Rule 8(a) "permits 'very broad joinder'" in order to avoid wasting

judicial resources, but the rule's broad reach is "not infinitely elastic." *United States v.*

*Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (quoting *United States v. Mackins*, 315 F.3d 399,

412 (4th Cir. 2003)). Joinder is not proper when the only connection between the counts is

the defendant. *Hawkins*, 776 F.3d at 209 (citing *United States v. Cardwell*, 433 F.3d 378, 387

(4th Cir. 2005)); *Mackins*, 315 F.3d at 412-413. There must be limits because the "joinder of

unrelated charges 'create[s] the possibility that a defendant will be convicted based on

considerations other than the facts of the charged offense.'" *Hawkins*, 776 F.3d at 206

(quoting *Cardwell*, 433 F.3d at 384-85).

## II.    Rule 14 – Relief from Prejudicial Joinder

Even if joinder is proper under Rule 8, this Court has the discretion to grant a

severance under Rule 14 of the Federal Rules of Criminal Procedure. *United States v. Lane*,

474 U.S. 438, 449 (1986). Rule 14(a) states:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). "Rule 14's concern is to provide the trial court with some flexibility when a joint trial may appear to risk prejudice to a party." *Lane*, 474 U.S. at 449, n. 12. In seeking severance under Rule 14, the defendant must make a "genuine" and "strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d at 387-88 (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); accord *United States v. Qazah*, 810 F.3d 879, 891 (4th Cir. 2015).


## ANALYSIS

### III.    Rule 8(a) – Joinder of Offenses

At the hearing, the Government confirmed that its argument in support of joinder of Count Ten rests solely upon the "common scheme or plan" theory under Rule 8(a). The Government describes the purported common scheme as "Oaks' use of his official position, power and influence as a legislator to obtain money and other benefits to which he was not entitled." (Opp'n 20, ECF No. 47.) In support of this theory, the Government cites *United States v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978), *abrogated in part on other grounds by McNally v. United States*, 483 U.S. 350, 356 (1987), in which the United States Court of Appeals for the Eighth Circuit approved joinder when "[a]ll the offenses charged stem from misconduct while [the defendant] was a public official." *Rabbitt*, 583 F.2d at 1021. At the hearing in this

case, the Government also stressed that Rule 8(a)'s "connected with" language permits joinder of Count Ten, which is causally related to the Defendant's participation in the scheme alleged in Counts One through Nine.

In terms of the cross-admissibility of evidence, a hallmark of Rule 8(a), *see Hawkins*, 776 F.3d at 206, the Government asserts that evidence of Counts One through Nine would be necessary to explain Count Ten's context, such as *"why* Oaks was in the hotel room on January 9, 2017, and *what* led to his agreement to cooperate." (Opp'n 22, ECF No. 47.) The Government also alleges that "[t]he obstruction evidence will show Oaks had a history of accepting corrupt payments and other benefits from Person #1 and that Oaks expected to continue to receive payments and benefits from Person #1." (*Id.*) The Government argues that, under Rule 404(b), this evidence would be admissible in a trial on Counts One through Nine to prove "Oaks' intent, knowledge, and absence of mistake in accepting similar cash and other benefits." (*Id.* 23.) Finally, the Government contends that Oaks' willingness to cooperate would be relevant and admissible to show Oaks' consciousness of guilt with respect to Counts One through Nine. (*Id.*)

The Defendant, on the other hand, argues that the "common scheme or plan" theory under Rule 8(a) does not warrant joinder of Count Ten when the bribery scheme and obstruction scheme differ in numerous respects, including (a) the temporal gap between bribery conduct (April 2016-January 2017) and obstruction conduct (March 2017); (b) the lack of overlap of any third-party key players; (c) that Count 10 alleges no official acts or bribery; (d) that the Government investigations focused on different targets; and (e) the Defendant's differing roles. (Mot. 3-5, ECF No. 44.) Such differences also undermine the

relevance or admissibility of evidence from one scheme in proving the other, which undermines judicial economy. (*Id.* 5.)

The Defendant also notes that the scheme to solicit bribes from Person #1, including Person #1's $2,600 under-the-table bribe and potential tax assistance, was a government-initiated bribery scheme in which the Government, not the Defendant, would benefit. (*See* Reply 4, ECF No. 48.) In the Defendant's view, this Government direction distinguishes *Rabbit*, 483 U.S. 350, and shows that there is "no commonality of role or purpose." (Reply 5.)[1]

While there may be some evidentiary and contextual overlap,[2] the Defendant's scheme to commit bribery and his scheme to obstruct justice are two distinct efforts that lack a shared objective. The Defendant himself appears to be the only connection between the two schemes, which is plainly insufficient under Fourth Circuit precedent. *Hawkins*, 776 F.3d at 209; *Mackins*, 315 F.3d at 412-413. The Government asks this Court to accept "Oaks' use of his official position, power and influence as a legislator to obtain money and other benefits to which he[3] was not entitled" as the overarching "common scheme or plan."

---

[1] In his supplemental brief (ECF No. 52), the Defendant argues that the Fourth Circuit has only approved joinder of an obstruction of justice count when the obstruction was intended to impede the investigation into the misconduct underlying the other counts, *United States v. Carmichael*, 685 F.2d 903 (4th Cir. 1982), or to facilitate the other misconduct, *United States v. Bankole*, 164 F.3d 626 (tbl.), 1998 WL 722439 (4th Cir. 1998) (unpublished). According to the Defendant, the same cannot be said of the Defendant Oak's alleged obstruction. The government's supplemental response (ECF No. 52) argues that *Carmichael* and *Bankole* actually support joinder because the alleged obstruction "hindered the continuing investigation of the defendant's conduct of accepting payments as a public official from various individuals, including Person #1." (ECF No. 52 at 2.) These supplemental submissions do not change the analysis below. The *Carmichael* decision is based upon the "same act or transaction" theory, which the government does not advance here. The *Bankole* decision, which addressed a "common scheme or plan," does not apply here because Oaks "intended to tip off Person #1 so as to prevent him from engaging in unlawful conduct" (Opp'n 18, ECF No. 47) -- not to facilitate bribes from Mike Henley.

[2] This observation is not intended to resolve the question of whether evidence of Person #1's alleged prior payments to Oaks would be admissible under Rule 404(b) in a trial on Counts One through Nine.

[3] At the hearing, the Government added "Person #1" as an additional beneficiary of the purported common scheme. While the Government explained at the hearing that the FBI was already aware of Person #1 before Defendant Oaks'

(Opp'n 20, ECF No. 47.) This theory is both overbroad and underinclusive for the purposes of satisfying Rule 8(a).

First, the Government's alleged scheme is so broad that *any* act of corruption at *any* point during Defendant Oaks' public service could be properly joined to the Government's liking. Even Rule 8(a)'s interest in judicial economy does not warrant such a permissive approach. At oral argument, the Government attempted to limit its facially overbroad theory by arguing that any such joinder would still require some fact-specific connection between the corrupt schemes. The Defendant, however, appears to be the only connection between the bribery scheme alleged in Counts One through Nine and the obstruction scheme alleged in Count Ten.[4] The Fourth Circuit has consistently held that joinder is not proper when the only connection between the alleged schemes is the defendant. *Hawkins*, 776 F.3d at 209; *Mackins*, 315 F.3d at 412-413.

Furthermore, the Government's reliance on *Rabbitt*, 483 U.S. 350, to support its broad characterization of the Defendant's corrupt scheme is misplaced. In that case, the Eighth Circuit held that joinder of multiple counts of corruption against one elected official may be proper even where the misconduct involved different bribers and different official acts. *Id.* at 1019-21. The Eighth Circuit observed that the defendant's "common plan" was to "to obtain money because of his power, authority, and influence as a legislator." *Id.* at 1021. If Count Ten charged Defendant Oaks with another count of bribery – this time to support legislation favorable to the bail bond industry rather than a purported Texas businessman –

---

offer to cooperate, the Government has not shown how Person #1 was the beneficiary of the bribery scheme alleged in Counts One through Nine.

[4] In making this observation, this Court stresses that the Defendant connects the *schemes* themselves, whereas some evidence and context connects the government *investigations*.

then *Rabbitt* would provide persuasive authority in favor of joinder here. Count Ten, however, charges the Defendant with obstructing justice by secretly informing Person #1 that he was under investigation, conduct that neither involves "Oaks' use of his official position, power and influence as a legislator" nor constitutes an effort "to obtain money and other benefits to which he was not entitled." The *Rabbitt* decision, therefore, does not apply to this case.[5]

Second, the distinction of *Rabbitt* underscores how the Government's theory is underinclusive. Defendant Oaks is not alleged to have obstructed justice "to obtain money and other benefits to which he was not entitled." Rather, the Government's own brief concedes that Oaks "intended to tip off Person #1 so as to prevent him from engaging in unlawful conduct." (Opp'n 18, ECF No. 47.) At the hearing, the Government did not challenge the Defendant's assertion that the $2,600 Person #1 allegedly paid to Defendant Oaks is now in the Government's possession. The Government has not shown what, if any, *personal* benefit Defendant Oaks sought, let alone retained, in tipping-off Person #1. The Government's description of the purported overarching scheme therefore fails to capture Count Ten.

---

[5] Although not necessary to this conclusion, this Court notes that this 1978 Eighth Circuit decision was abrogated in part on other grounds by *McNally v. United States*, 483 U.S. 350, 356-361 (1987). In *McNally*, the Supreme Court held that the federal mail fraud statute did not proscribe schemes by elected officials to defraud citizens of their intangible rights to the honest services of their representatives. *Id.* Congress quickly responded to the *McNally* decision by enacting 18 U.S.C. § 1346, which defines "scheme or artifice to defraud" in § 1341 to explicitly include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346, Pub. L. No. 100–690 (HR 5210), November 18, 1988, 102 Stat 4181. This provision became known as the "*McNally* Amendment" as it was "intended merely to overturn the *McNally* decision. No other change in the law is intended." 134 Cong. Rec. H11108-01 (daily ed. Oct. 21, 1988) (statement of Rep. Conyers).
The Government also cites *United States v. Hutchings*, 751 F.2d 230 (8th Cir. 1984), to support its broad theory of joinder, but that case is distinguishable on essentially the same grounds as *Rabbitt*.

Perhaps recognizing this shortcoming, the Government at oral argument emphasized Rule 8(a)'s "connected with" language. The timeline of events in this case undoubtedly reveals a causal connection between the two *investigations*, but the alleged bribery conduct and the alleged obstruction conduct do not share a "common scheme or plan." Fed. R. Crim. P. 8(a). The Government's argument would perhaps have merit if Rule 8(a) required only "common facts" or "common individuals" or "common context" or "common investigators" or a connection with "a [] scheme or plan." The text of Rule 8(a), however, requires two charges to share a "common scheme or plan." Fed. R. Crim. P. 8(a). In this case, the Defendant's scheme or plan in the alleged bribery counts was to "to obtain money and other benefits to which he was not entitled." Defendant's scheme or plan in the alleged obstruction count was "to prevent [Person #1] from engaging in unlawful conduct." (Opp'n 18, ECF No. 47.) These two schemes are quite distinct and far from "common" as required by Rule 8(a). Joinder of Count Ten is therefore improper, and Count Ten must be severed.

## IV.    Rule 14 – Relief from Prejudicial Joinder

In the alternative, if Count Ten were properly joined under Rule 8(a), this Court now turns to the question of whether to exercise its discretionary authority – as acknowledged by the Government at the hearing – to sever Count Ten under Rule 14 of the Federal Rules of Criminal Procedure.   Rule 14(a) enables this Court to sever Count Ten if a joint trial "appears to prejudice [the] defendant." Fed. R. Crim. P. 14(a).

The Defendant asserts that two sources of prejudice, as identified in *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976), justify severance in this case. First, "the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against

self-incrimination with respect to one crime but not the other." (Mot. 7, ECF No. 44 (quoting *Foutz*, 540 F.2d at 736).) The Defendant asserts that it is "reasonable" and "plausible" that he "may wish to testify as to Count Ten, but not Counts One through Nine, since . . . the government's proof is the word of someone (Person #1) who was (and perhaps still is) facing criminal prosecution." (*Id.*) Defendant Oaks "may be coerced into testifying on the count upon which he wished to remain silent." (*Id.* 8 (quoting *Baker v. United States*, 401 F.2d 958, 976 (D.C. Cir. 1968)).)

Second, the Defendant argues that "the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." (Mot. 7 (quoting *Foutz*, 540 F.2d at 736).) For example, the jury may find the Defendant guilty of the bribery counts and go on to convict him of the obstruction count simply because he is a "dirty" or "crooked" politician. The Defendant asserted at the hearing that such a risk is especially acute when most of the evidence in a joint trial would focus on Counts One through Nine.

In response, the Government argues that Defendant Oaks fails to make a "strong showing of prejudice" as required by Rule 14. (Opp'n 25, ECF No. 47 (citing *Goldman*, 750 F.2d at 1225).) First, the Government contends that the Defendant's claim that it is "conceivable" he "may" want to testify falls short of showing a "genuine" and "serious risk of prejudice," (Opp'n 26-27), especially when he allegedly confessed to tipping-off Person #1. The Government also notes that while Oaks did not record his own statements tipping-off Person #1, Oaks did record other conversations probative of his obstruction efforts. (*Id.* 26.) Second, the Defendant's concern about the jury improperly relying upon a "criminal

disposition" is speculative and has "no actual basis." (*Id.* 28.) The Government further argues that a curative jury instruction, which would be presumed effective, *Zafiro*, 506 U.S. at 540-41, would mitigate any risk of prejudice in this case, particularly when the offenses are equally inflammatory or sensational. (*Id.* 28-29.)

This Court finds that the Defendant has made a strong and genuine showing that the joinder of Count Ten would present "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d 387-88. In terms of the Defendant's presentation of defenses, a joint trial may very well encumber the Defendant's decision about whether to assert his Fifth Amendment privilege against self-incrimination. *See United States v. Clark*, 928 F.2d 639, 644-45 (4th Cir. 1991); *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968). It is objectively reasonable for the Defendant to desire to testify *solely* as to Count Ten in order to refute, explain, or qualify either the alleged obstructive comments or his own alleged confession, neither of which was recorded on tape. The disparity in recorded conversations between the bribery counts and the obstruction count distinguishes the ultimate holding in *United States v. Clark*, 928 F.2d 639, 644-45 (4th Cir. 1991), in which the Fourth Circuit approved joinder because the defendant failed to show how a *joint* trial would present *additional* pressure on the decision to testify. *Cf. Baker*, 401 F.2d at 977 (approving joinder where "appellant could not have escaped the need to give such testimony in a separate trial"). No jury instruction could remedy the forces at play upon the Defendant's assertion of his Fifth Amendment privilege against self-incrimination.

Regarding the risk of the jury improperly relying upon a perceived criminal propensity, Rule 404(b) of the Federal Rules of Evidence is instructive. *See Foutz*, 540 F.2d at

736. Rule 404(b) restricts the admissibility of evidence of "other crimes" because "some degree of prejudice is necessarily created by permitting the jury to hear evidence of both crimes." *See id.* (citations omitted).

While the Government asserts that Person #1's prior transactions with the Defendant would be admissible under Rule 404(b) in a trial on Counts One through Nine to prove Oaks' "intent, . . . knowledge, . . . [and/or] absence of mistake" in accepting similar cash and other benefits,[6] the Government struggles to demonstrate how evidence of Counts One through Nine would be admissible in a trial on Count Ten. The Government concludes that the bribery evidence would be necessary to prove the "factual context" of Oaks' cooperation agreement, but offers no authority or analysis under Rule 404(b), or Rule 403 for that matter. This Court notes that "factual context" is not listed in Rule 404(b) as a "permitted use." Furthermore, the purported "contextual" evidence the Government would seek to introduce in a joint trial, such as videos of Defendant Oaks accepting bribes on three occasions (Opp'n 22, ECF No. 47), would present a risk that the jury would unfairly rely upon a perceived criminal character when considering the obstruction charge in Count Ten. Based upon the current record, such a prejudicial risk substantially outweighs the evidence's probative value as "factual context." This apparent prejudice also warrants severance under Rule 14 of the Federal Rules of Criminal Procedure. *See Foutz*, 540 F.2d at 736.

Taken together, these two forms of prejudice present "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence."

---

[6] This Court reserves ruling on evidentiary issues raised under Rule 404(b) in the trial on Counts One through Nine.

*Cardwell*, 433 F.3d at 387-88. Even if joinder were proper under Rule 8(a), this Court hereby exercises its discretion under Rule 14 to sever Count Ten.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion for Severance of Count Ten (ECF No. 44) is GRANTED, and Count Ten is severed from Counts One through Nine. The trial of this case shall proceed as scheduled on April 16, 2018 with respect to Counts One through Nine, and a separate trial – to be scheduled at a later date – shall be held with respect to Count Ten.

A separate Order follows.

Dated: January 19, 2018

_/s/ Richard D. Bennett_

Richard D. Bennett
United States District Judge